UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KEITH JENSEN<br>*Plaintiff*<br><br>V.<br><br>BURGERS OF BEAUMONT I, LTD.<br>D/B/A WHATABURGER,<br><br>*Defendant*. | Case No. 1:23-cv-00686<br><br><br><br>(JURY DEMANDED) |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Keith Jensen files this Original Complaint and Jury Demand against Defendant Burgers of Beaumont I, Ltd. and would respectfully show the following:

### Parties

1.  Keith Jensen is a resident and citizen of the State of Texas.

2.  Defendant Burgers of Beaumont I, Ltd. d/b/a Whataburger may be served with process by serving its registered agent: **JAMES E. WATTS, 3817 SOUTH ALAMEDA STREET, SUITE E, CORPUS CHRISTI, TEXAS 78411.**

### Venue & Jurisdiction

3.  This case arises under the Court's federal question jurisdiction based on Plaintiff's claim under Title VII.

4.  Venue in this District is proper as it satisfies the requirements of 28 U.S.C. § 1391, in that Defendant is a resident of the Western District of Texas, Defendant is subject to

1

personal jurisdiction in the District of this Court, and a substantial part of the events and omissions giving rise to the claim occurred in the District of this Court, including in Kerr County and Burnet County, Texas.

## Factual Background

5. This is a retaliation and discrimination lawsuit. Specifically, Burgers of Beaumont I, Ltd. d/b/a Whataburger ("Defendant" or "Burgers of Beaumont") discriminated and retaliated against Keith Jensen by firing him because of his sexual orientation and for reporting sexual orientation discrimination. Prior to his termination, Burgers of Beaumont, which operates multiple Whataburger franchises across Texas, initially hired Mr. Jensen in 2012, as a District Manager. He was subsequently promoted to Director of Operations. On the date of his wrongful termination, Mr. Jensen was employed as Director of Operations.

6. Joe Ellis, Vice President of Operations at Burgers of Beaumont, was Mr. Jensen's direct supervisor. In December 2021, Ellis began discriminating against Mr. Jensen. In more detail, Mr. Jensen informed Ellis about his fibromyalgia condition. In response, Jensen's supervisor told Jensen that he "didn't have the right parts" – meaning, Mr. Jenson was the wrong gender and anatomically did not have the "right parts." Ellis also explicitly referred to Jensen as a "lady."

7. Because at that time, Burgers of Beaumont did not have a Human Resources Department, Mr. Jensen reported Ellis's comments to Jim Watts, owner of the Whataburger franchise. To be clear, Ellis's comments regarding Mr. Jensen's fibromyalgia constitute sex discrimination. Following Mr. Jensen's reports of discrimination, Mr. Watts, and

instead of directing an appropriate response to the misconduct by Mr. Ellis, Mr. Watts instead ordered Mr. Jensen to meet with Ellis to "resolve" the matter.

8.     During the December 2021 meeting, Mr. Jensen and Ellis discussed the discriminatory comments. Ellis demanded that Mr. Jensen explain why his inappropriate comments regarding Mr. Jensen's fibromyalgia condition and anatomy upset him. During the discussion, Mr. Jensen shared that the comments were particularly harmful as he was bisexual. Ellis immediately responded by yelling, "Why are you telling me this?! I don't need to know that" and again exclaiming, "Why did you tell me that?!" At the same time, Mr. Ellis was grinding his teeth and seething. Concerned about the conduct being exhibited, including Ellis's anger, Mr. Jensen left the meeting. Once Mr. Jensen had left the location, he called the owner, Mr. Watts. Mr. Watts ignored his calls. Ellis then called Mr. Jensen approximately 15-20 minutes after the meeting and demanded that Mr. Jensen return to the meeting despite his abusive and hostile conduct toward Jensen. Mr. Jensen subsequently did as he was directed and returned to the meeting.

9.     Unfortunately, Ellis accelerated harassing and retaliating against Mr. Jensen because of his sexual orientation. Indeed, Ellis excluded Mr. Jensen from important tasks and decisions previously routinely entrusted to Mr. Jensen. For example, Mr. Jensen learned about policy changes only through his subordinates. Put differently, Mr. Ellis excluded Jensen from being part of policy changes and decisions within the company that had previously been a regular part of his job. Mr. Ellis also excluded Mr. Jensen from important communications. For example, Mr. Jensen learned from Katelyn Barney, one of his subordinates' subordinates, that the company had implemented a new methodology

3

regarding Personnel Action notices. At the same time, Ellis refused to be physically near Mr. Jensen and ignored Mr. Jensen's important work-related inquiries and emails. After Mr. Jensen came out, Mr. Ellis also repeatedly ignored Mr. Jensen's texts and calls. And even though Personal Action Notices required Ellis's signatures, Ellis refused to sign many of the Personal Action Notices sent by Mr. Jensen. Mr. Ellis's improper retaliation continued until Mr. Jensen was wrongfully terminated.

10. On or around August 15, 2022, while Mr. Jensen was out of the office on vacation, Burgers of Beaumont established a Human Resources hotline:

> From: 1mmize@burgersofbmt.com <1mmize@burgersofbmt.com>
> Sent: Monday, August 15, 2022 5:19 PM
> To: payroll@burgersofbmt.com
> Subject: Updated HR Flyer
> Importance: High
>
> Good afternoon Everyone,
>
> Please see the attached updated HR hotline flyer, print, and post in all stores as soon as possible. This updated flyer includes the newly issued QR code which allows more anonymity to employees if there is a harassment issue witnessed or experienced. This flyer and QR code are for all employees. All calls, emails, and harassment surveys are kept confidential, and no one will ever experience retaliation for speaking up. This is an opportunity for us to better understand our employees and provide workplace satisfaction.
>
> Thank you,
>
> Megan Mize
> Human Resource Dept.
> Burgers of Beaumont I, Ltd
> Office Manager
> Utmost Management, Inc
> 361-854-1015 Phone
>
> **BURGERS OF BEAUMONT LTD**
> A WHATABURGER FRANCHISEE

Shortly after the hotline was created, in August 2022, Mr. Jensen called Burgers of Beaumont's Human Resources hotline to report Mr. Ellis's ongoing misconduct. Mr. Jensen reported to Megan Mize during the call that Ellis was targeting Mr. Jensen due to

4

his bisexuality and initial report of his fibromyalgia. Ms. Mize responded by advising Mr. Jensen to not tell anyone he is bisexual because that is "personal" information. Ms. Mize also informed him to never discuss this information with anyone in the company, ever. Put bluntly, in response to Mr. Jensen reporting sexual orientation discrimination, Burgers of Beaumont's Human Resources ordered Mr. Jensen to attempt to conceal his sexual orientation. Following the call, Ms. Mize reiterated her position in a follow up email:

> **From:** 1mmize@burgersofbmt.com <1mmize@burgersofbmt.com>
> **Sent:** Friday, August 19, 2022 1:33 PM
> **To:** 1keithj@burgersofbmt.com
> **Subject:** RE: #692 and #744 Bobbie Charles hours corrected
>
> Thank you for voicing your concerns Keith.
>
> I will continue to perform my investigation on the allegations presented to HR and will work swiftly to resolve any issues pertaining to HR.
>
> Per the phone call earlier that reiterated your email below in addition to other information provided, please understand <u>anything brought to my attention not regarding the company is personal information provided and not to be brought to my attention going forward.</u>
>
> As HR I cannot promise complete confidentiality as I may have to involve other individuals regarding the investigation, however I am taking your complaints seriously and I will handle the investigation in a fair and appropriate manner.
>
> Thank you,
>
> Megan Mize
> Human Resource Dept.
> Burgers of Beaumont I, Ltd
> Office Manager
> Utmost Management, Inc
> 361-854-1015 Phone

11.    The day after Mr. Jensen reported sexual orientation discrimination to HR, Mr. Jensen was prohibited from using the phone provided to him by Burgers of Beaumont for personal purposes. This action, punitive in nature, occurred even though when Mr. Jensen originally joined the company in 2012, Mr. Watts, the Owner of Burgers of Beaumont,

5

expressly recommended that Mr. Jensen use his phone for personal purposes because it was "too difficult to manage two phones."

12. Thereafter, on August 22, 2022, Mr. Jensen was removed from the Burgers of Beaumont's Dropbox. And on August 31, 2022, Burgers of Beaumont terminated Mr. Jensen's employer-sponsored insurance. Thus, instead of addressing Mr. Ellis's ongoing discriminatory conduct, Burgers of Beaumont took several actions to punish and retaliate against Mr. Jensen for reporting discrimination. Burgers of Beaumont's retaliation culminated in Mr. Jensen's termination on September 1, 2022. On the date of Mr. Jensen's termination, Burgers of Beaumont held a meeting with Jim Watts, Joe Ellis, Megan Mize, and Burgers of Beaumont's counsel, Jay Wallace. Burgers of Beaumont's pretextual basis for terminating Mr. Jensen was an alleged "restructuring" of the company. After wrongfully terminating Mr. Jensen, Burgers of Beaumont attempted to silence Mr. Jensen by proffering a release of all claims against Burgers of Beaumont in exchange for $5,000. Mr. Jensen declined.

13. The timeline confirms Burgers of Beaumont responded to Mr. Jensen's complaints of discrimination by firing him for a clearly fabricated reason. Because of these reports, Mr. Jensen was retaliated against as to the terms, conditions, opportunities, treatment, disciplinary actions, and termination at Burgers of Beaumont.

14. As part of its conduct, Burgers of Beaumont also knowingly, violated its own written non-discrimination policies, Burgers of Beaumont's Employee Handbook contains the following policies:

**EQUAL OPPORTUNITY POLICY**

Burgers of Beaumont has, on many occasions, expressed support and commitment to the principle of equal employment opportunity. It is our policy to recruit, hire, train, and promote individuals, as well as administer any and all personnel actions, without regard to race, color, creed, age, sex or sexual orientation, pregnancy, physical or mental disability, genetic identity, veteran status, marital status, national origin, or any other protected classification under federal, state or local law. We will not tolerate any unlawful discrimination and any such conduct is prohibited.

.

**HARASSMENT**

All Burgers of Beaumont employees have a right to work in an environment free from all forms of discrimination and conduct which can be considered harassing, coercive, or disruptive. Consistent with Burgers of Beaumont's respect for the rights and dignity of each employee, harassment based on race, color, creed, age, sex or sexual orientation, pregnancy, physical or mental disability, genetic identity, veteran status, marital status, national origin, or any other protected classification under federal, state or local law, will not be sanctioned nor tolerated. All employees should, therefore, be aware of the following policies.

**HOW THE COMPANY WILL INVESTIGATE COMPLAINTS**

The Company will thoroughly and promptly investigate all claims of harassment. The Company will meet with the complaining employee to discuss the results of the investigation and, where appropriate, review the proposed resolution of the matter. If an investigation confirms that harassment has occurred, the Company will take corrective action, including such discipline up to and including immediate termination of employment, as is appropriate. Claims of assault or the threat of assault, if proven, will result in dismissal.

Complaints of harassment will be kept as confidential as possible. Information will be released only on a "need to know" basis and no employee will be subjected to retaliation by the Company because he or she has reported what he or she believes to be an incident of harassment.

15. Despite these explicit policies, Burgers of Beaumont discriminated, harassed, and retaliated against Mr. Jensen because he reported his sexual orientation discrimination.

16. Mr. Jenson has now filed this lawsuit in light of Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended.

### **Exhaustion Of Administrative Remedies**

17. Mr. Jensen filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on December 7, 2022. In that Charge, and any amendments and/or attachments thereto, Mr. Jenson has asserted that Defendant discriminated and retaliated against him because of his sexual orientationand his reports of

violations of Title VII. Mr. Jensen has received his right-to-sue Defendant for Title VII for violations from the EEOC.

**FIRST CAUSE OF ACTION:**
**UNLAWFUL SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

18. Defendant, through its agents, supervisors, or employees engaged in unlawful sex discrimination by subjecting Mr. Jensen to unwelcome harassment and differential treatment including favoritism and promotion practices motivated by his sexual orientation, as well as open disdain for his sexual orientation.

19. The above-described unwelcome harassment and differential treatment created an intimidating, oppressive, hostile environment, which interfered with Plaintiff's emotional and physical well-being.

20. Defendant at all times relevant hereto had actual and/or constructive knowledge of the conduct described in the paragraphs above in large part because of the position of the harassers, Plaintiff's reports of misconduct, and/or the open and obvious nature of the misconduct that permeated.

21. As a result of the hostile and offensive environment perpetrated by Defendant, Mr. Jensen suffered severe emotional distress and injury.

22. Defendant violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and omissions of the harassers as described in the paragraphs above.

23. Defendant failed to comply with its statutory duty to promptly take all reasonable and necessary steps to eliminate harassment and differential treatment from the workplace and to prevent it from occurring in the future.

24. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against Mr. Jensen through its agents, supervisors, or employees, Mr. Jensen has suffered and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress; he has incurred and/or will incur medical expenses for treatment by psychotherapists and other health professionals, and for other incidental expenses; and he has suffered and/or will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Mr. Jensen is thereby entitled to general and compensatory damages in amounts to be proven at trial.

25. Plaintiff further seeks punitive damages for Defendant's conduct because Defendant knew it was unlawful to discriminate based on sexual orientation, including based on its policies and procedures, yet continued to discriminate against Mr. Jensen.

26. As a further direct and proximate result of Defendant's violation of Title VII, as heretofore described, Mr. Jensen has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extend of which are presently unknown to Plaintiff.  Mr. Jensen requests that attorney's fees be awarded pursuant to Title VII.

## **SECOND CAUSE OF ACTION:** <br> **UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII**

31. After opposing such harassment and differential treatment as identified in Cause of Action Numbers 1 and 2, Mr. Jensen was subsequently harassed, isolated, targeted, transferred, terminated, and falsely accused.

32. Defendant had no legitimate business reasons for any such acts. Each act of retaliation is in violation of Title VII's anti-retaliation provisions.

33. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination and retaliation against him, Mr. Jensen has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Mr. Jensen is thereby entitled to general, compensatory and punitive damages in amounts to be proven at trial.

34. The above-described acts on Defendant's part were undertaken in violation of Title VII and proximately caused Mr. Jensen's substantial injuries and damages.

### Resulting Legal Damages

27. Mr. Jensen is entitled to the actual damages resulting from Defendant's violations of the law. Defendant's retaliatory and discriminatory discharge of Mr. Jensen entitles him to actual damages, punitive damages, mental anguish, pain and suffering, exemplary damages, attorney's fees and other penalties provided by law.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Mr. Jensen respectfully requests that he have judgment against Defendant for legal damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which Mr. Jensen may be entitled.

Respectfully submitted,

**DOYLE DENNIS LLP**

_____
MICHAEL PATRICK DOYLE
State Bar No. 06095650
PATRICK M. DENNIS
State Bar No. 24045777
JEFFREY I. AVERY
State Bar No. 24085185
EMMA R. BROCKWAY
State Bar No. 24125156
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Phone: 713.571.1146
Fax:   713.571.1148
service@doylelawfirm.com

**ATTORNEYS FOR PLAINTIFF**

## JURY DEMAND

*Plaintiff hereby demands a trial by jury, a right enshrined in the Constitution of the United States of America and of the State of Texas and preserved by the sacrifices of many.*

_____
MICHAEL PATRICK DOYLE