IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KEITH JENSEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-686-DII |
| | § | |
| BURGERS OF BEAUMONT I, LTD. | § | |
| *d/b/a* WHATABURGER, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is the report and recommendation of United States Magistrate Judge Mark Lane concerning Defendant Burgers of Beaumont I, Ltd. *d/b/a* Whataburger's ("Defendant") motion to compel arbitration, (Dkt. 6). (R. & R., Dkt. 11). Plaintiff Keith Jensen ("Plaintiff") timely filed objections to the report and recommendation. (Objs., Dkt. 12). Defendant filed a response to Plaintiff's objections, (Dkt. 14), and Plaintiff filed a reply in support of his objections, (Dkt. 15). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that the report and recommendation should be adopted in part but the motion to compel arbitration should be denied.

## I. BACKGROUND

Plaintiff was hired by Defendant as a District Manager in 2012 and subsequently was promoted to the position of Director of Operations. (Compl., Dkt. 1, at 2). Plaintiff alleges that in 2021 his supervisor began discriminating against him based on his sex and sexual orientation. After Plaintiff tried to report this discrimination, he alleges that his supervisor began to retaliate against him by excluding him from important tasks and decisions. Plaintiff also alleges that Burgers of Beaumont management failed to address his concerns when he reported the discrimination and then

also retaliated against him. Plaintiff contends that he was wrongfully terminated on September 1, 2022. (*Id.* at 2–6).

Plaintiff filed his complaint on June 16, 2023, asserting claims for unlawful sex discrimination and retaliation in violation of Title VII. (*Id.* at 8–10). On August 22, 2023, Defendant moved to compel Plaintiff's claims to arbitration, pursuant to an employment arbitration agreement (the "Agreement"). (Mot., Dkt. 6; Agreement, Dkt. 6-1). Plaintiff argues that the arbitration agreement is not enforceable because it requires arbitration through the American Mediation Association ("AMA"), an entity that no longer exists. (Resp., Dkt. 8, at 1–2). In support, Plaintiff relies upon an unpublished Fifth Circuit opinion, *Ranzy v. Tijerina*, that affirmed a district court's decision to deny a motion to compel arbitration where the parties' chosen arbitrator was no longer available and the parties' choice to designate the arbitrator as the sole arbitration forum was an integral part of the arbitration agreement. 393 F. App'x 174, 175 (2010). Plaintiff also argues that the arbitration agreement is unenforceable because several provisions are unconscionable. (Resp., Dkt. 8, at 2).

On October 6, 2023, the Court referred Defendant's Motion to Compel to the assigned magistrate judge for a report and recommendation. (Text Order dated Oct. 6, 2023). On January 18, 2024, the magistrate judge issued a report and recommendation, recommending that the motion to compel arbitration be granted. (R. & R., Dkt. 11). The magistrate judge found that the present case was unlike *Ranzy* for two reasons: (1) The Agreement mandates that the Federal Arbitration Agreement and the Texas General Arbitration Act apply to the Agreement, and (2) the parties did not intend that the AMA's role in the arbitration would be an integral part of the Agreement. (*Id.*). Thus, the magistrate judge found that the Agreement was enforceable even though AMA no longer existed. The magistrate judge also found that Defendant's agreement not to enforce the allegedly unconscionable provisions of the Agreement made Plaintiff's unconscionability arguments moot.

(*Id.*). Plaintiff filed objections to the report and recommendation on February 1, 2024. (Objs., Dkt. 12). In his objections, Plaintiff re-urges his position that the motion to compel should be denied because here, as in *Ranzy*, the parties agreed to arbitrate with a defunct entity and this decision was integral to the arbitration agreement. (*Id.* at 4).

## II. LEGAL STANDARD

### A. Report and Recommendation

The Federal Rules of Civil Procedure authorize magistrate judges to make findings and recommendations for dispositive motions. Fed. R. Civ. P. 72(b)(1). For dispositive motions, parties are entitled to *de novo* review of any part of a magistrate judge's report and recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). The district judge has the discretion to "accept, reject, or modify the recommended disposition." *Id*; *see also* 28 U.S.C. § 636(b)(1)(c).

### B. Motion to Compel Arbitration

The Federal Arbitration Act (the "FAA") permits a party to file a motion to compel arbitration based on "the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. "Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Questions of an arbitration agreement's existence and validity are governed by state law. *See, e.g.*, *Halliburton Energy Servs. v. Ironshore Specialty Ins.,* 921 F.3d 522, 530 (5th Cir. 2019).

Written arbitration agreements are prima facie valid under the FAA and must be enforced unless the party opposed to arbitration "allege[s] and prove[s] that the arbitration clause itself was a product of fraud, coercion, or 'such grounds as exist at law or in equity for the revocation of the contract.'" *Freudensprung v. Offshore Tech. Servs., Inc.,* 379 F.3d 327 341 (5th Cir. 2004) (quoting *Nat'l*

*Iranian Oil Co. v. Ashland Oil, Inc.,* 817 F.2d 326, 332 (5th Cir. 1987)); *see also* 9 U.S.C. § 2. Federal

policy favors arbitration and "any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration, whether the problem at hand is the construction of the contract

language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l*

*Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983) (citations omitted).

### III. DISCUSSION

Because Plaintiff timely objected to the magistrate judge's report and recommendation, the

Court reviews the report and recommendation *de novo*.

### A. Unconscionability

To start, the Court briefly addresses Plaintiff's arguments that several provisions of the

Agreement are unconscionable. Specifically, Plaintiff protests provision 1.09, which contains a

limitation on the recovery of damages:

> Remedies available to the employee or company in arbitration shall be
> the same as would be available had the matter been brought in court.
> However, in the event that the statute under which a party is seeking
> recovery does not contain a specified monetary recovery provision, the
> maximum amount that an arbitrator may award for any and all damages
> shall not exceed $25,000.

(Agreement, Dkt. 6-1, ¶ 1.09). Plaintiff argues that this provision significantly and unconscionably

limits the amount of damages that Plaintiff could otherwise seek in this action under Title VII.

(Resp., Dkt. 8, at 13–15). Plaintiff also objects to provision 1.17, which shortens the statute of

limitations for claims subject to arbitration:

> All claims subject to arbitration must be submitted to arbitration within
> one year of the date of the incident giving rise to the claim or is forever
> barred. The filing of a charge of discrimination with the EEOC,
> TCHRA, or any legally recognized local agency, or the filing of a
> lawsuit, shall not toll or delay this time limit for requesting arbitration.

(Agreement, Dkt. 6-1, ¶ 1.17). Plaintiff argues that this provision is improper because it disclaims the

time limits set out under Title VII and the mandate that those limitations are subject to equitable

tolling. Here, Plaintiff contends that this provision is unconscionable because it would bar his claims because the "incident giving rise to" his claim—his termination—occurred over one year ago. (Resp., Dkt. 8, at 15–17). In response, Defendant agreed to waive each provision that Plaintiff alleged to be unenforceable. (Reply, Dkt. 9, at 5–6).

In his report and recommendation, the magistrate judge found that Defendant's agreement not to enforce these provisions rendered Plaintiff's unconscionability arguments moot. (R. & R., Dkt. 11, at 3). Despite the restrictive and likely unenforceable nature of these provisions, upon *de novo* review, the Court adopts the magistrate judge's finding that Defendant's waiver of these provisions causes Plaintiff's unconscionability arguments to be moot.

### B. Impossibility

Next, the Court turns to Plaintiff's primary argument that it cannot be compelled to arbitration because the parties' decision to arbitrate before the AMA was integral to their contract and the AMA no longer exists. Upon *de novo* review,[1] the Court finds that the parties' decision to arbitrate with the AMA is an integral part of the arbitration agreement and finds this case to be analogous to *Ranzy v. Tijerina*. Accordingly, the Court will deny the motion to compel arbitration.

In *Ranzy*, the parties agreed to arbitrate all disputes before the National Arbitration Forum ("NAF"). 393 F. App'x at 175. Specifically, the arbitration agreement stated that:

> You and we agree that any and all claims, disputes, or controversies . . . *shall* be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum. . . . This agreement to arbitrate all disputes *shall* apply no matter by whom or against whom the claim is filed. Rules and forms of the NAF

---

[1] The Fifth Circuit has not directly ruled on the applicable standard for reviewing a magistrate judge's decision on motions to compel arbitration. *See Lee v. Plantation of La., L.L.C.*, 454 Fed. App'x 358, 360 n.3 (5th Cir. 2011) ("[W]e need not reach the question of whether a motion to compel arbitration is a dispositive or non-dispositive motion for purposes of the standard of review by the district judge of the magistrate judge's order."). This Court's practice has been to treat motions to compel arbitration as dispositive motions. (*See* Text Order dated Oct. 6, 2023 (referring the present motion for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72)). However, because Plaintiff's objection raises only a question of law—namely, whether the parties' designation of the Ama is integral to the parties' agreement—the Court's analysis would be the same as under the "contrary to law" standard of review for non-dispositive motions. *See* Fed. R. Civ. P. 72(a).

> may be obtained and all claims *shall* be filed at any NAF office, [or by
> contacting the NAF via the internet, phone, or mail].

*Id.* (emphasis and alterations in original). At the time of the dispute, however, NAF had stopped

handling the type of consumer claims that were at issue in the case and was therefore unavailable. *Id.*

The plaintiff therefore argued that the arbitration agreement was invalid because of the impossibility

of performance. *Ranzy v. Extra Cash of Texas, Inc.*, No. H-09-3334, 2010 WL 936471, at *3 (S.D. Tex.

March 11, 2010)). The district court identified that the key inquiry was whether the parties'

designation of the NAF as the sole arbitration forum was an integral part of the arbitration

agreement. *Id.* The Fifth Circuit agreed with the district court's decision that it was an integral part

of the agreement because the "'mandatory, not permissive' plain language of the arbitration

provision 'evinces a specific intent of the parties to arbitrate before the NAF.'" *Id.* (quoting *Ranzy*,

2010 WL 936471, at *5). The Fifth Circuit highlighted that the key language that the parties "shall"

submit their claims to the NAF and that the procedural rules of the NAF "shall" govern the

arbitration proceeding was evidence that the parties had "explicitly agreed that the NAF shall be the

exclusive forum for arbitrating disputes." *Id.* at 176. The Fifth Circuit explained that "where the

parties' agreement specifies that the laws and the procedures of a particular forum shall govern any

arbitration between them, that forum-selection clause is an 'important' part of the arbitration

agreement." *Id.* (quoting *Nat'l Iranian Oil Co.*, 817 F.2d 326 at 334). Therefore, it held that the district

court had properly denied the motion to compel. *Id.*

Because both parties signed the Agreement, (*see* Agreement, Dkt. 6-1, at 7–8), there is a

prima facie valid agreement to arbitrate. The key inquiry then becomes whether the parties' decision

to arbitrate before the now-defunct AMA "is an integral part of the arbitration agreement, rather

than an ancillary logistical concern." *Ranzy*, 393 F. App'x 174 at 175–76. In resolving this issue, "the

court must employ the rules of contract construction to determine the intent of the parties." *Id.* at

176 (quoting *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000)). The Court concludes that the parties

decided that the AMA should be the exclusive forum for them to arbitrate their disputes and that this decision was an integral part of the Agreement. Because the AMA no longer exists, Plaintiff has carried his burden in proving that the Agreement is unenforceable because performance is impossible.

As in *Ranzy*, the Agreement contains many references to the AMA. In setting out the rules governing arbitration proceedings and how the proceedings will be initiated, provision 1.12 of the Agreement contains mandatory language:

> The rules governing arbitration proceedings *shall be* as set forth . . .by the American Mediation Association [AMA], Dallas, Texas.
>
> The American Mediation Association [AMA] filing fee *shall be paid* by the party seeking resolution under this plan. If any party refuses to pay any required fee, then this *shall represent* a refusal to arbitrate per this plan, and the other party may request a summary ruling from the arbitrator.
>
> Prior to the initiation of arbitration, the employee and company shall attempt to resolve the dispute by informal internal discussion. If the dispute cannot be resolved, then either party may contact the American Mediation Association [AMA].

(*Id.* ¶ 1.12) (emphasis added). These provisions are nearly identical to the mandatory language in the *Ranzy* agreement, which stated that the parties "shall" submit their claims to the NAF and the NAF procedural rules "shall" govern any arbitration between them. Because provision 1.12 specifies the procedures of a particular forum that will govern any arbitration between the parties, it is, at the very least, an "important" part of the arbitration agreement. *See Nat'l Iranian Oil Co.*, 817 F.2d 326 at 334.

The Agreement goes further, containing more mandatory language in provision 1.14 about how the parties will go about selecting an arbitrator. Provision 1.14 states in full:

> The Company and Employee shall attempt to select a mutually acceptable arbitrator. If an arbitrator cannot be selected within thirty days of the demand for arbitration, the *American Mediation Association [AMA] shall submit* to each party a list of five (5) qualified persons, along with information on their backgrounds and qualifications. The parties may then agree on a person. If the parties fail to agree on an

arbitrator, each party *will rank* the arbitrator candidates from one to five (one being the preferred) and *return* the rankings to the *American Mediation Association [AMA]*. The candidate whose total score is the lowest *shall be* the arbitrator. In the event of a tie score, the *American Mediation Association [AMA] shall select* the arbitrator.

If a party fails to return their rankings within 30 days of receipt, then that party agrees to the appointment of any person on the list. If neither party returns the list within the time limit, then the *American Mediation Association [AMA] may appoint* any person on the list.

(Agreement, Dkt. 6-1, ¶ 1.14) (emphasis added). This provision first allows the parties the opportunity to mutually select an arbitrator, but if the parties fail to select someone within thirty days, the provision mandates that the AMA: (1) narrow the choice of arbitrators to five qualified persons; (2) be the entity to process the ranking of arbitrator candidates; and (3) select the arbitrator in the event of a tie. In addition, in the event that the parties do not abide by the ranking process, the provision gives the AMA a permissive role in appointing an arbitrator itself. In sum, provision 1.14 anticipates a significant role for the AMA in the arbitrator selection process. And taken together with provision 1.12, the contract clearly evinces that an integral part of the Agreement was the parties' decision to arbitrate before an AMA arbitrator, use AMA rules, and rely on the AMA to select an arbitrator if the parties could not do so amongst themselves.

Defendant raises various points to argue that the ultimate intent of the Agreement was to designate the arbitration process in general as the means for resolving disputes, rather than the judicial system. Defendant contends that the references to the AMA merely demonstrate that the parties considered the AMA to be one option among several others to resolve such disputes. (Resp. Objs., Dkt. 14, at 1–2). Ultimately, none of these arguments are convincing.

Defendant's primary argument is that the Agreement contains many provisions that reference arbitration, but which do not reference arbitration specifically before the AMA. (*See id.* at 4). Defendant first cites a series of general provisions, such as the Opening Statement of the Agreement, which states that: "Neither the Employee nor Company may bring a lawsuit in any state

or federal court against the other regardless of the nature of the claim or the severity of alleged damages," or two definitional provisions that define the terms "arbitration," "claim, controversy, dispute, or difference." (*See* Agreement, Dkt. 6-1, at p. 1, ¶¶ 1.01, 1.04). However, these general provisions that summarize the Agreement and define what arbitration means do not supplant the specific instructions in provisions 1.12 and 1.14 as to the forum and procedures by which the arbitration proceedings shall take place. *See Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002) ("It is a fundamental axiom of contract interpretation that specific provisions control general provisions.") (citing Restatement (Second) of Contracts § 203(c)).

Defendant also cites provision 1.05, the first non-definitional provision, which states in relevant part: "All employees . . . shall be required to submit any legally recognized claim to arbitration, rather than litigation, *according to this plan and the rules established for its enforcement*." (Agreement, Dkt. 6-1, ¶ 1.05) (emphasis added). Defendant conveniently omits the last phrase of this sentence, which emphasizes that an arbitration proceeding must conform to the other provisions listed in the plan, including the provisions mandating that an AMA mediator and AMA procedures must be used. Thus, this provision does not undermine but rather supports the integral nature of the AMA to the Agreement. For a similar reason, Defendant's cite to provision 1.08 is unpersuasive because, in relevant, part it also states that "[u]ltimate resolution therefore shall be in arbitration, *pursuant to this plan*." (*Id.* ¶ 1.08) (emphasis added).

Defendant next cites a few provisions that mention the term "arbitrator" but do not specifically mention that the arbitrator be related to the AMA. For example, provision 1.13 states that "[t]he arbitrator shall have expertise and experience in resolving employment-related disputes or claims." However, this provision comes between provision 1.12, which states that the AMA filing fee "shall be paid" and AMA rules "shall be" used, and provision 1.14, which contemplates a significant role for the AMA in the event that the parties cannot decide upon an arbitrator.

Therefore, it seems clear that provision 1.13 should be read in concert with these provisions. Another example is the first sentence of provision 1.14, which states that "The Company and Employee shall attempt to select a mutually acceptable arbitrator." However, as laid out above, the full text of provision 1.14 clearly contemplates a role for the AMA in choosing an arbitrator if the parties cannot agree upon one. Instead, the Court understands this line to work in tandem with the mandate of provision 1.12 that the AMA rules and filing fee shall be paid—meaning, that it requires the parties to first attempt to select a mutually acceptable *AMA* arbitrator; if they cannot, then the AMA steps in to help them select an arbitrator, based on the procedure laid out in provision 1.14.

Defendant also cites the last line of provision 1.12 for the proposition that the AMA was simply one option for the rules and forum by which arbitration would proceed. That line states that: "Prior to the initiation of arbitration, the employee and company shall attempt to resolve the dispute by informal internal discussion. If the dispute cannot be resolved, then either party *may* contact the American Mediation Association [AMA]." (*Id.* ¶ 1.12) (emphasis added). Defendant stresses the permissive nature of this provision as reason why this case is dissimilar to the mandatory language in *Ranzy*. However, the Court cannot accept Defendant's argument, which relies on taking lines of the contract out of the context in which they appear. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) ("Contract terms cannot be viewed in isolation[ ] . . . because doing so distorts meaning."). As discussed above, provision 1.12 first states that the "rules governing arbitration proceedings shall be as set forth . . . by the American Mediation Association [AMA]" and that the "American Mediation Association [AMA] filing fee shall be paid by the party seeking resolution." (Agreement, Dkt 6-1, ¶ 1.12). The permissive language of the last sentence simply allows either party to be the one who initiates the arbitration process once informal internal discussion fails; this sentence does not undermine the mandatory language stated beforehand. *See Indem. Ins. Co. of N.A. v. W & T Offshore, Inc.*, 756 F.3d 347, 351 (5th Cir. 2014) ("A court construing

a contract must read that contract in a manner that confers meaning to all of its terms, rendering the contract's terms consistent with one another.") (cleaned up).

Another provision Defendant raises is provision 1.11 which states that the FAA "shall apply to and govern any matter submitted to arbitration pursuant to this Plan" and in the event that the FAA is inapplicable, then "the Texas General Arbitration Act shall apply." (Agreement, Dkt. 6-1, ¶ 1.11). However, as Plaintiff points out in his objections, the arbitration agreement in *Ranzy* had almost the exact same provision: "[This arbitration agreement] shall be governed by the Federal Arbitration Act." (Objs, Dkt. 12, at 2); *Ranzy*, 2010 WL 936471, at *1. The inclusion of this provision did not stop the district court or the Fifth Circuit from finding that the parties' choice to arbitrate before the NAF was integral to the contract. This Court similarly does not find that this provision undermines the holding that the AMA is integral to the contract. Reading provision 1.11 in context with the rest of the Agreement and in harmony with the other provisions, it does not override the mandatory language in provisions 1.12 and 1.14 to use the AMA as the exclusive forum for any arbitration proceeding.

Last, Defendant raises a new argument in in its response to Plaintiff's objections: It attempts to differentiate this case from *Ranzy* by arguing that the Agreement has a "provision akin to a severance provision." (Resp. Objs., Dkt. 14, at 6). Specifically, it cites provision 1.22, which states in relevant part: "This plan shall, without any action required, automatically amend to comply with any applicable state Supreme Court, US Court of Appeals or US Supreme Court decision regarding the enforceability of arbitration plans." (Agreement, Dkt. 6-1, ¶ 1.22). Defendant contends that provision 1.22 demonstrates that the parties intended for their agreement to arbitrate to survive potential future legal attacks. In support, Defendant attempts to draw a comparison to *Jackson v. Diversicare Humble, LLC*, 2017 WL 1169681 (S.D. Tex. Mar. 28, 2017), a case in which an arbitration

agreement that made reference to a defunct arbitrator was determined to be valid and distinguishable from *Ranzy* because the agreement contained a severance provision.

The Court, nonetheless, finds *Jackson* to be inapplicable to the current case. The severance provision in *Jackson* read:

> The Parties agree that all of the provisions contained in this Agreement are severable. In the event that any provision of the Agreement, or portion thereof, is held to be invalid by a court of competent jurisdiction, this Agreement shall be interpreted as if the invalid provision or portion was not contained herein, and the remaining provisions of the Agreement will remain in full force and effect and shall continue to be valid and enforceable and binding upon the Parties. This Agreement will not fail because any part, clause or provision hereof is held to be indefinite, invalid, or unenforceable.

*Jackson*, 2017 WL 1169681, at *1. Provision 1.22, on the other hand, is much weaker: It is not explicitly a severance provision, it does not instruct a court to interpret the contract as if an invalid provision was not contained within, and it does not state that the Agreement should remain in effect regardless of any unenforceable provision. Provision 1.22 cannot save the Agreement where, as here, an integral part of the contract is impossible to perform.

In sum, the mandatory plain language in provisions 1.12 and 1.14 of the Agreement demonstrates that the parties agreed not only to arbitrate, but to arbitrate exclusively before the AMA using AMA rules. Defendant attempts to skirt around this mandatory language by requesting that this Court read various contract provisions in isolation and apart from provisions 1.12 and 1.14. But reading the Agreement as a whole and interpreting all the provisions in the Agreement so that each provision is read to be consistent with the other provisions in the contract, it is evident that the parties' decision to use the AMA is an integral part of the contract. *See Ranzy*, 393 F. App'x at 176; *Nat'l Iranian*, 817 F.2d at 334. "Arbitration agreements are subject to the same rules of construction used to interpret contracts." *Harvey*, 199 F.3d at 794. Although federal policy favors arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *see*

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Because the AMA no longer exists, the parties cannot be compelled to arbitrate before them or any another entity. *See Nat'l Iranian*, 817 F.2d at 335. Accordingly, the Court must deny the motion to compel arbitration.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff's objections to the report and recommendation are **SUSTAINED**. The report and recommendation of United States Magistrate Judge Mark Lane, (R. & R., Dkt. 11), is **ADOPTED IN PART** in accordance with this order.

**IT IS FURTHER ORDERED** that Defendant's motion to compel arbitration, (Dkt. 6), is **DENIED**.

**IT IS FINALLY ORDERED** that the parties consult the website for the United States District Court for the Western District of Texas (www.txwd.uscourts.gov), the "Judges' Info" tab, "Standing Orders," "Austin Division," and submit a joint proposed scheduling order using District Judge Robert Pitman's form on or before **March 26, 2024**.

**SIGNED** on March 12, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE